UNITED STATES BANKRUPTCY COURT
DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| In Re: | Bankruptcy No. 14–30652 |
| Janice M. Altendorf, | Chapter 7 |
| Debtor. | |
| _____/ | |
| Andrew Murray, Tim Chapman, Ruan Gouws, Hugh Barron, Raymond Owen, Morne Vivier, Dorin Butnariu, and Andre Marneweck, | |
| Plaintiffs, | |
| vs. | Adversary No. 15–07003 |
| Janice M. Altendorf, | |
| Defendant. | |
| _____/ | |

**MEMORANDUM AND ORDER**

**I.    INTRODUCTION**

Before the Court is Defendant Janice M. Altendorf's Motion to Dismiss Adversary Proceeding.  Doc. 5.  Plaintiffs Andrew Murray, Tim Chapman, Ruan Gouws, Hugh Barron, Raymond Owen, Morne Vivier, Dorin Butnariu and Andrew Marneweck filed a response opposing the motion.  Doc. 9.  For the reasons stated below, the motion is granted in part and denied in part.

**II.    BACKGROUND**

Plaintiffs are former employees of Altendorf Transport, Inc. (d/b/a Altendorf Harvesting), where they worked as commercial harvesters through the "federal H-2A guestworker visa program."  Doc. 1-1, at ¶ 15.  Debtor Janice M. Altendorf, is the

1

"president and owner of the family custom harvesting operation" of Altendorf Transport. Id. at ¶ 14.

On October 28, 2010, Plaintiff Murray initiated a claim against Debtor individually and against Altendorf Transport, Inc. in the United States District Court for the District of North Dakota. On March 28, 2014, the district court granted class action status and several other plaintiffs joined the action. Plaintiffs brought claims under the Fair Labor Standards Act, North Dakota minimum wage laws and the Trafficking Victims Protection Act. See id. at ¶ 23. Plaintiffs also asserted claims for breach of contract. Id. On November 17, 2014, Plaintiffs filed a "motion for leave to file a second amended complaint" in the district court, seeking to add claims under the Racketeer Influenced and Corrupt Organizations Act and a cause of action for alter ego liability. See id. at ¶ 42–44. Before the district court ruled on the motion, Debtor petitioned for relief under Chapter 7 of the Bankruptcy Code. Case No. 14-30652, Doc. 1. On January 9, 2015, the district court entered an order staying the class action case due to the pending bankruptcy case.

On March 16, 2015, Plaintiffs filed this Adversary Proceeding, bringing nondischargeability claims under sections 523(a)(2)(A) and 523(a)(6) of the Bankruptcy Code as well as a claim objecting to discharge under section 727(a)(3). See Doc. 1-1, at ¶¶ 47–57. Specifically, Plaintiffs allege that "[a]ll or part of the debt owed to Plaintiffs and the Class, as supported by the documents filed in Murray et al v. Altendorf Transport, Inc. et al and those attached hereto, are non-dischargeable as the debt is for services obtained by false pretenses, false representation, or actual fraud within the meaning of Bankruptcy Code § § 523(a)(2)(A)." Id. at ¶ 49. Further, Plaintiffs allege

2

"[a]ll or part of the debt owed to Plaintiffs and the Class, as supported by the documents filed in Murray et al v. Altendorf Transport, Inc. et al and those attached hereto, are non-dischargeable as the debt for willful and malicious injury within the meaning of Bankruptcy Code § 523(a)(6)." Id. at ¶ 52.  Finally, Plaintiffs allege Debtor conducted various businesses, including Altendorf Transport and Valesco Diversified, Inc., as her alter egos and further "concealed, destroyed, mutilated, falsified, or failed to keep or preserve recorded information, including books, documents, records, and papers, from which the Defendant's financial condition or business transactions might be ascertained." Id. at ¶¶ 55–56.  Plaintiffs contend that Debtor "failed to file and / or produce tax returns for Altendorf Transport, Inc. during the 2012 and 2013 tax years, which are critically important to an ascertainment of Defendant's financial condition and business transactions." Id.

Plaintiffs attached 126 pages of additional information to the Complaint initiating this Adversary Proceeding.  Specifically, Plaintiffs attached their Proposed Second Amended Complaint filed in the district court, as well as various other documents, including employment contracts, applications for alien employment certification and correspondence with the United States Department of Labor and documents exchanged with Job Service of North Dakota. See Docs. 1-2 to 1-4.  In their Complaint, Plaintiffs specifically incorporated by reference the allegations contained in their Proposed Second Amended Complaint.  See Doc. 1-1, at ¶ 42.

In their Proposed Second Amended Complaint, Plaintiffs assert a variety of allegations against Debtor that are relevant to this proceeding.  Specifically, Plaintiffs claim they "entered into employment contracts with Defendant Altendorf Harvesting[.]"

3

Doc. 1-2, at ¶ 16.  In addition, Plaintiffs allege Debtor "ultimately required Plaintiffs and similarly situated persons to work many hours a week beyond the number of hours stated in the ETA-750s and ETA-790s and at a rate below the AEWR in violation of their employment contracts and the minimum contractual provisions established by the H-2A regulations."  Id. at ¶ 17.  Plaintiffs further allege that during their employment with Altendorf Harvesting, they "performed activities, performed duties, and spent time that constitutes time worked, for which Defendants were obligated to compensate Plaintiffs and all similarly situated persons at their regular, premium, or overtime rate under the FLSA, North Dakota state law, and under the terms of their employment contract."  Id. at ¶ 18.

Plaintiffs claim "Defendants knew or should have known that Plaintiffs and all similarly situated persons were performing their required duties while working for wages below the amount agreed to in their employment contracts" and that "Defendants knew of, should have known of, or showed reckless disregard for their obligations to properly compensate Plaintiffs[.]"  Id. at ¶¶ 21 and 22.  Plaintiffs also allege that "Defendants knew, or should have known, that their reckless or willful failure to pay hourly straight time and overtime to Plaintiffs violates [their] rights, privileges, and immunities" and that "Defendants have either recklessly or knowingly and intentionally failed to compensate Plaintiffs for wages earned in a particular work period by the regular pay day for the period in which the work ended."  Id. at ¶¶ 42 and 43.

Plaintiffs further contend that Debtor "conducted the affairs of [Altendorf Harvesting] through a pattern of racketeering activity . . . by devising and executing a scheme to defraud Plaintiffs and other H-2A guestworkers of money for hourly wages

4

actually worked from at least October 30, 2007 through August of 2010 by willfully, knowingly, and intentionally making false statements to the United States government in applications for H-2A guestworkers, [and] obtaining forced labor of Plaintiffs through threat of serious financial harm[.]" Id. at ¶ 28.  Further, Plaintiffs detail a variety of false statements Debtor allegedly made to the United States Department of Labor, including statements that "H-2A guestworkers would work 48 total hours per week from 9:00 a.m. to 5:00 p.m. at an hourly rate of pay of $9.55[,]" and that "the wage offered to H-2A guest workers would equal or exceed the prevailing wage and that the job opportunity's terms, conditions and occupational environment were not contrary to federal state or local law." Id. at ¶¶ 104 and 105.  Plaintiffs allege that Debtor made similar false allegations to "Job Service North Dakota" and the "United States Department of Labor's Employment and Training Administration." See id. at ¶¶ 107–118.  Plaintiffs claim they "suffered and continue to suffer substantial losses related to the use and enjoyment of such wages, lost interest on such wages, and expenses and attorney's fees in seeking to compel Defendants to fully perform its obligations as required by the employment contracts. . . ." Id. at ¶ 59.

Plaintiffs also allege Debtor "threatened Plaintiffs with serious financial harm" as a result of an alleged "practice of firing, or threatening to fire, employees shortly before the expiration of their contracts[.]" Id. at ¶ 55 and 53.  Put another way, Plaintiffs contend "Altendorf used threats of serious financial harm to obtain the labor of Plaintiffs and other H-2A guestworkers." Id. at ¶ 82.

### III. LEGAL DISCUSSION

#### A. Motion To Dismiss Standard

Federal Rule of Bankruptcy Procedure 7012(b) provides that Rule 12(b) of the Federal Rules of Civil Procedure applies in adversary proceedings.  Fed. R. Bankr. P. 7012(b).  When considering a motion to dismiss for failure to state a claim upon which relief can be granted, the Court accepts as true the factual allegations in the complaint and construes all reasonable inference in favor of the plaintiff.  Alexander v. Hedback, 718 F.3d 762, 765 (8th Cir. 2013).  To withstand a motion to dismiss, a complaint must include facts sufficient to "state a claim to relief that is plausible on its face." Retro Television Network, Inc. v. Luken Commc'ns, LLC., 696 F.3d 766, 768 (8th Cir. 2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Gallagher v. City of Clayton, 699 F.3d 1013, 1016 (8th Cir. 2012) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  Determining whether a claim is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Zink v. Lombardi, 783 F.3d 1089, 1098 (8th Cir. 2015) (internal quotation and citation omitted).  A complaint need not include "detailed factual allegations," but it is not sufficient to tender "naked assertions" that are "devoid of further factual enhancement." Id. at 1098 (quoting Iqbal, 556 U.S. at 678).  The Court need not accept as true the plaintiff's legal conclusions, even if they are "cast in the form of factual allegations." Ashley v. U.S. Dep't. of Interior, 408 F.3d 997, 1000 (8th Cir. 2005) (quoting Warren v. Fox Family Worldwide, 328 F.3d 1136, 1141 n.5 (9th Cir. 2003)).  The Court may also

6

consider "matters incorporated by reference or integral to the claim" at the motion to dismiss stage. Miller v. Redwood Toxicology Lab., Inc., 688 F.3d 928, 931 n.3 (8th Cir. 2012) (citation omitted).

### B. Claim Under Section 523(a)(2)(A)

In Count I of their Complaint, Plaintiffs seek a determination that the debt owed to them by Debtor is nondischargeable under section 523(a)(2)(A). Section 523(a) of the Bankruptcy Code excepts certain debts from discharge in bankruptcy, including debts for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud. 11 U.S.C. § 523(a)(2)(A). To prevail on a claim that Debtor is not entitled to a discharge on the debt owed to them, Plaintiffs must first establish that their services were "obtained by" false pretenses, a false representation, or actual fraud. Id. After making the threshold showing, Plaintiffs must then establish:

> (1) the debtor made a false representation; (2) at the time the representation was made, the debtor knew it was false; (3) the debtor made the representation deliberately and intentionally with the intention and purpose of deceiving the creditor; (4) the creditor justifiably relied on the representation; and (5) the creditor sustained loss and damage as a proximate result of the misrepresentation.

Marcusen v. Glen (In re Glen), 427 B.R. 488, 492 (B.A.P. 8th Cir. 2010).

Debtor contends that Plaintiffs pleaded a "wholly conclusory claim" and that Plaintiffs failed to allege "a single representation made by Ms. Altendorf, false or otherwise." Doc. 5, at 4. Further, Debtor contends that, to the extent Plaintiffs allege Debtor made any statements at all, the statements were made to third parties, such as various United States and North Dakota governmental agencies. Debtor argues that

7

the representations must be made with the purpose and intent of deceiving the creditor and that the creditor must justifiably rely on those statements.

The first three elements of a section 523(a)(2)(A) claim require Plaintiffs to show that Debtor made a false representation which Debtor knew was false at the time she made it, and that Debtor made the representation deliberately and intentionally with the intent and purpose of deceiving Plaintiffs.  See Marcusen, 427 B.R. at 492.  Plaintiffs alleged facts sufficient to meet the plausibility standard in support of the first three elements of their section 523(a)(2)(A) claim.  For example, Plaintiffs allege that they entered into employment contracts (representations) which Debtor violated by requiring Plaintiffs to work more than the required number of hours and at an hourly rate below that they agreed upon.  Doc. 1-2, at ¶¶ 16–18.  Further, Plaintiffs allege Debtor violated their employment contracts by refusing to pay Plaintiffs for overtime.  Id. at ¶ 17.  Plaintiffs also contend that Debtor "devis[ed] and execut[ed] a scheme to defraud Plaintiffs and other H-2A guestworkers of money for hourly wages actually worked from at least October 30, 2007 through August of 2010 by willfully, knowingly, and intentionally making false statements to the United States government in applications for H-2A guestworkers[.]"[1]  Id. at ¶ 28.

---

[1] Plaintiffs further explain in detail a variety of false statements Debtor allegedly made to the United States Department of Labor, including statements that "H-2A guestworkers would work 48 total hours per week from 9:00 a.m. to 5:00 p.m. at an hourly rate of pay of $9.55[,]" and that "the wage offered to H-2A guest workers would equal or exceed the prevailing wage and that the job opportunity's terms, conditions and occupational environment were not contrary to federal state or local law."  See id. at ¶ 107–118.  Evidence supporting these facts may be relevant at trial if Plaintiffs can prove they had knowledge of such statements or that Plaintiffs were aware of the requirements set forth under the H-2A guestworkers program and state law.

8

The fourth element of a section 523(a)(2)(A) claim requires Plaintiffs to show they justifiably relied on Debtor's representation. The Court can reasonably infer that Plaintiffs justifiably relied on the representations made to them in the employment contracts Plaintiffs signed and which were attached to the Complaint. See Alexander, 718 F.3d at 765 (stating that a court, when considering a motion under Rule 12(b)(6), must "accept[] the plaintiff's factual allegations as true and constru[e] all reasonable inferences in favor of the plaintiff"). To be clear, Plaintiffs will have the burden of proving justifiable reliance at trial, but at this early stage in the litigation, the facts as stated in the Complaint are sufficient to support a plausible claim for relief.

Debtor argues that Plaintiffs' claim should fail because they did not specifically allege that Debtor made misrepresentations to Plaintiffs.[2] In support of their argument, Debtor cites Marcusen v. Glen (In re Glen), 427 B.R. 488 (B.A.P. 8th Cir. 2010), where the Bankruptcy Appellate Panel of the Eighth Circuit reversed a bankruptcy court's determination that a debt was nondischargeable under section 523(a)(2)(A). Debtor argues that In re Glen stands for the proposition that a false statement or

---

[2] Debtor characterizes section 523(a)(2)(A) as contemplating nondischargeability of debts obtained only by false statements made by a debtor, but section 523(a)(2)(A) is actually much broader. Section 523(a)(2)(A) contemplates actual fraud, false pretenses, and false representations. "Actual fraud, by definition, consists of any deceit, artifice, trick or design involving direct and active operation of the mind, used to circumvent and cheat another—something said, done or omitted with the design of perpetrating what is known to be a cheat or deception." Merchants Nat'l Bank of Winona v. Moen (In re Moen), 238 B.R. 785, 790 (B.A.P. 8th Cir. 1999) (citation omitted). In addition, a "false pretense involves implied misrepresentations or conduct intended to create and foster a false impression. . . . When the circumstances imply a particular set of facts, and one party knows the facts to be otherwise, that party may have a duty to correct what would otherwise be a false impression." Id. at 791 (internal quotation marks and citation omitted). Finally, a "misrepresentation denotes not only words spoken or written but also any other conduct that amounts to an assertion not in accordance with the truth." Id. (internal quotation marks and citation omitted).

9

misrepresentation made to a third party cannot be the basis for reliance under section 523(a)(2)(A) because the representation or false statement must be made with the intent and purpose of deceiving the *creditor* and that the *creditor* must have justifiably relied on the representation. While evidence regarding what Debtor allegedly said to third parties might be relevant at trial if Plaintiffs can prove Debtor made such statements with the intent of deceiving Plaintiffs and that Plaintiffs justifiably relied on them[3], Plaintiffs' allegation that Debtor made a representation directly to them in the form of an employment contract is alone sufficient for Plaintiffs' claim to survive a motion to dismiss.

The final element of a section 523(a)(2)(A) claim requires that Plaintiffs show they sustained damages proximately caused by Debtor's representation. Debtor alleges that Plaintiffs pleaded only "threadbare recitals of the elements" by stating

---

[3] The Court notes that In re Glen does not directly stand for the proposition that representations made to third parties can never be made with the intent and purpose of deceiving a creditor or that a creditor cannot justifiably rely on statements made to another party. In re Glen dealt with a bankruptcy court's findings of fact and conclusions of law based on the evidence provided at trial, not with whether a complaint could withstand a Rule 12(b)(6) motion. In that case, the Bankruptcy Appellate Panel concluded that a debtor who failed to disclose to a bank that another creditor held a mortgage against a certain piece of property did not, under the facts and circumstances of that case, constitute a false representation to the creditor. Id. at 493. The court concluded that the representation could have only constituted a misrepresentation to the bank because the debtor had already given the creditor a lien on the property and the debtor failed to disclose that lien to the bank. Id. The court in In re Glen did not foreclose the possibility of a section 523(a)(2)(A) claim when a representation was made to a third party, and some courts specifically recognize such a theory. See e.g., Stallworth v. McBride (In re McBride), 512 B.R. 103, 112 (Bankr. D. Mass. 2014) ("Although the courts usually articulate the test for establishment of a false representation under § 523(a)(2)(A) as requiring a false statement "to the creditor,". . . nothing in the language of the statute requires so narrow a construction. What the statute requires is a "debt . . . for [services] . . . obtained by . . . a false representation. 11 U.S.C. § 523(a)(2)(A)."); Limberger v. Cleary (In re Cleary), 487 B.R. 633, 642 (Bankr. D. Md. 2013) ("It is not necessary that misrepresentations be communicated directly to the creditor so long as there is reason to expect that the creditor will rely on the misrepresentation and that her conduct will be detrimentally influenced thereby.").

10

several times that Debtor "proximately caused" Plaintiffs injuries. Doc. 11, at 5. Debtor is correct that Plaintiffs often use language stating their damages were "proximately caused" by Debtor's conduct, and such language, standing alone, might constitute the type of "naked assertion" over which the United States Supreme Court expressed concern in Iqbal. However, Plaintiffs' allegations contain more substance than mere legal conclusions. Specifically, Plaintiffs allege they were not compensated according to the terms of their contracts and federal law and "suffered and continue to suffer substantial losses related to the use and enjoyment of such wages, lost interest on such wages, and expenses and attorney's fees in seeking to compel Defendants to fully perform its obligations as required by the employment contracts. . . ." Doc. 1-2, at ¶ 59. Based on these allegations, the Court finds that Plaintiffs pleaded sufficient facts to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Gallagher v. City of Clayton, 699 F.3d 1013, 1016 (8th Cir. 2012) (quoting Iqbal, 556 U.S. at 678). Debtor's motion to dismiss Plaintiffs' section 523(a)(2)(A) claim is DENIED.

### C. Claim Under Section 523(a)(6)

In Count II of their Complaint, Plaintiffs seek a determination that the debt owed to them by Debtor is nondischargeable under section 523(a)(6). Section 523(a)(6) excepts from discharge debts "for willful and malicious injury by the debtor to another entity or to the property of another entity[.]" 11 U.S.C. § 523(a)(6). "It is well established in the Eighth Circuit that the elements of 'malice' and 'willfulness' must be separately analyzed." Sailor Music v. Walker (In re Walker), 514 B.R. 585, 589 (B.A.P. 8th Cir. 2014) (citations omitted).

11

The Bankruptcy Appellate Panel for the Eighth Circuit explained the malice and willfulness elements as follows:

> "The word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury,* not merely a deliberate or intentional act that leads to injury ..." Kawaauhau v. Geiger, 523 U.S. 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). The "willful" element is a subjective one. Blocker v. Patch (In re Patch), 526 F.3d 1176, 1180 (8th Cir. 2008). "If the debtor knows that the consequences are certain, or substantially certain, to result from his conduct, the debtor is treated as if he had, in fact, desired to produce those consequence[s]." Id.
>
> Malice requires more than just reckless behavior by the debtor. Scarborough, 171 F.3d at 641 (citing In re Miera, 926 F.2d at 743). The defendant must have acted with the intent to harm, rather than merely acting intentionally in a way that resulted in harm. Id. "Circumstantial evidence of the debtor's state of mind [can] be used to ascertain whether malice existed." In re Fors, 259 B.R. at 139 (quoting In re Miera, 926 F.2d at 744).
>
> "If the debtor was aware of the plaintiff-creditor's right under law to be free of the invasive conduct of others (conduct of the sort redressed by the law on the underlying tort) and nonetheless proceeded to act to effect the invasion with particular reference to the plaintiff, willfulness is established. If in so doing the debtor intended to bring about a loss in fact that would be detrimental to the plaintiff, whether specific sort of loss the plaintiff actually suffered or not, malice is established." Sells v. Porter, (In re Porter), 375 B.R. 822, 828 (B.A.P. 8th Cir. 2007), *aff'd*, 539 F.3d 889 (8th Cir. 2008) (quoting KYMN, Inc. v. Langeslag (In re Langeslag), 366 B.R. 51, 59 (Bankr. D. Minn. 2007)).

Id.

Further, "malice requires conduct more culpable than that which is in reckless disregard of the creditor's economic interests and expectancies." Johnson v. Logue (In re Logue), 294 B.R. 56, 63 (B.A.P. 8th Cir. 2003) (citations omitted). "The debtor's knowledge that he or she is violating the creditor's legal rights is insufficient to establish malice absent some additional aggravated circumstances. Conduct which is certain or almost certain to cause financial harm to the creditor is required." Id. (citations omitted).

Finally, "[w]hile intentional harm may be difficult to establish, the likelihood of harm in an objective sense may be considered in evaluating intent." Id. (citation omitted).

Debtor argues that Plaintiffs failed to allege either a willful or malicious injury. Specifically, Debtor argues that Plaintiffs merely allege a claim for breach of contract, and Debtor cites case law holding that, without more, even an intentional breach of contract does not constitute a willful and malicious injury under section 523(a)(6). See e.g., Legendary Leasing, Inc. v. Glatt (In re Glatt), 315 B.R. 501, 511 (Bankr. D.N.D. 2004). Plaintiffs argue that Debtor depriving them of wages was willful because it was "central to the scheme's purpose." Doc. 9, at 5. Plaintiffs further argue that the scheme was malicious because it was certain or almost certain to cause harm to Plaintiffs.

The Court concludes that Plaintiffs pleaded a plausible claim for relief under section 523(a)(6). Plaintiffs allege that Debtor willfully and intentionally established a scheme by which Debtor deliberately obtained labor through threats of financial harm and failed to pay Plaintiffs wages to which Debtor knew Plaintiffs were entitled. Plaintiffs will have the burden of proving that Debtor knew that the consequences of failing to pay the appropriate wages were certain, or substantially certain, to result. If Plaintiffs meet this burden, Debtor will be "treated as if [s]he had, in fact, desired to produce those consequences." In re Walker, 514 B.R. at 589. Based on Plaintiffs' allegations that Debtor "devis[ed] and execut[ed] a scheme to defraud Plaintiffs and other H-2A guestworkers of money for hourly wages actually worked," the Court concludes it is plausible that Debtor committed a willful injury against Plaintiffs. See Doc. 1-2, at ¶ 28.

Debtor points to Plaintiffs' argument that Debtor's goal was to increase profits for her corporation as proof that Debtor did not intend harm to Plaintiffs, but rather sought a benefit for herself. While it may be true that one of Debtor's goals was to increase profits, the Bankruptcy Appellate Panel for the Eighth Circuit made clear that "[c]onduct which is certain or almost certain to cause financial harm to the creditor" in addition to the "debtor's knowledge that he or she is violating the creditor's legal rights," when taken together, is sufficient to establish a claim under section 523(a)(6). In re Logue, 294 B.R. at 63. Debtor correctly argues that a breach of contract, by itself, will generally not establish malice under section 523(a)(6). However, Plaintiffs' allegations in this case go beyond a mere breach of contract. For example, Plaintiffs allege that Debtor "used threats of serious financial harm to obtain the labor of Plaintiffs and other H-2A guestworkers." Doc. 1-2, at ¶ 82. Taking these allegations as true for purposes of Debtor's motion, the Court concludes Plaintiffs' claim that Debtor intended harm to Plaintiffs is plausible. Therefore, Debtor's motion to dismiss Plaintiffs' section 523(a)(6) claim is DENIED.

### D. Claim Under Section 727(a)(3)

In Count III of their Complaint, Plaintiffs request that Debtor be denied a discharge because Debtor failed to produce tax returns for Altendorf Transport for the 2012 and 2013 tax years. Doc. 1-1, at ¶ 56. Further, Plaintiffs contend that such tax returns "are critically important to an ascertainment of Defendant's financial condition and business transactions." Id.

Under section 727(a)(3), "a party seeking the denial of the debtor's discharge must establish that a debtor 'concealed, destroyed, mutilated, falsified, or failed to keep

14

or preserve any recorded information, including books, documents, records, and papers, from which the Debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case . . . .'" McDermott v. Swanson (In re Swanson), 476 B.R. 236, 240 (B.A.P. 8th Cir. 2012) (quoting 11 U.S.C. § 727(a)(3)).

     Debtor argues that Plaintiffs failed to state a claim for which relief can be granted because section 727(a)(3) requires Debtor to keep only those records from which Debtor's financial condition may be ascertained. Implicit in Debtor's emphasis that section 727(a)(3) applies to records pertaining to the financial condition of the individual debtor is the suggestion that the tax returns of Altendorf Transport are not relevant to ascertaining the financial condition of Debtor. However, Plaintiffs specifically allege in their Complaint that Debtor used her business as her alter ago, and that as a result of such conduct, the tax returns for Altendorf Transport are relevant to ascertaining Debtor's individual financial condition. As a result, the Court rejects Debtor's suggestion that the tax returns are not relevant to the ascertainment of Debtor's financial condition.

     The Court concludes, however, that Plaintiffs did not sufficiently allege a claim under section 727(a)(3). The only facts alleged by Plaintiffs are that Debtor "failed to file and / or produce tax returns for Altendorf Transport, Inc. during the 2012 and 2013 tax years" and that the tax returns are "critically important to an ascertainment of Defendant's financial condition and business transactions." Doc. 1-1, at ¶ 56. Failing to file a tax return or to produce it during discovery in an adversary proceeding, without more, does not rise to the level of concealing or destroying financial documents under the circumstances of this case. At this point, Plaintiffs' allegations are insufficient to

15

establish a plausible claim under section 727(a)(3). Debtor's motion to dismiss Plaintiffs' section 727(a)(3) claim is GRANTED. The section 727(a)(3) claim is dismissed without prejudice to Plaintiffs' right to bring a subsequent action should the need arise after Plaintiffs proceed through the discovery process.

**IV.    CONCLUSION**

For the reasons provided above, Debtor Janice M. Altendorf's Motion to Dismiss Adversary Proceeding is DENIED with respect to Plaintiffs' section 523(a)(2)(A) and section 523(a)(6) claims. Debtor's motion is GRANTED with respect to Plaintiffs' section 727(a)(3) claim. Plaintiffs' section 727(a)(3) claim is dismissed without prejudice.

Dated this 29th day of July, 2015

*Shon Hastings*

Shon Hastings, Judge
United States Bankruptcy Court

16